## WOOD *v.* BEACH.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 143. Argued January 10, 1895. — Decided March 4, 1895.

In 1870 W. entered upon public land within the indemnity limits of a railway grant, occupied it, and continued to do so. It had then been withdrawn from the market by the Secretary of the Interior under instructions from Congress, and was eventually selected by the railroad company as part of its grant. *Held*, that W. acquired no equitable rights, as against the railroad company, by his occupation and settlement.

THIS case resembles those immediately preceding in that the plaintiff, now defendant in error, claiming title to a certain tract by deed from the Missouri, Kansas and Texas Railway Company, brought his action in the District Court of Allen County, Kansas, to recover possession of the land. Judgment was rendered in his favor in that court, which judgment was affirmed by the Supreme Court of the State, and from that court the case has been brought here on a writ of error.

*Mr. William Lawrence* for plaintiff in error.

*Mr. A. B. Browne,* (with whom were *Mr. A. T. Britton* and *Mr. George R. Peck,*) for defendant in error.

Mr. Justice Brewer delivered the opinion of the court.

The land in controversy is in an odd-numbered section, and within the indemnity limits of the Leavenworth, Lawrence and Galveston Railroad, and also within the like limits of the Missouri, Kansas and Texas Railway. The tract was selected, certified to the State, and by it patented to the railway company. The selection was made on August 8, 1872, and approved April 10, 1872, and the deed from the State was on May 9, 1873. Within the decision in *Kansas City, Lawrence &c. Railroad* v. *The Attorney General,* 118 U. S. 682, the legal title passed to the railway company. Mary E. Wood, the defendant, is the widow of C. B. Wood, who during his lifetime moved upon the land with his family, and sought to enter it as a homestead. But his occupation and settlement, as appears from the agreed statement of facts, commenced on June 8, 1870, and while this was prior to the selection by the railroad companies, the land had years before been withdrawn from sale or location, preëmption or homestead entries. Two orders of withdrawal were made by the Department of the Interior — one on March 19, 1867, for the benefit of the Leavenworth, Lawrence and Galveston Railroad Company, and the other on April 30, 1867, for the Missouri, Kansas and Texas Railway Company. These orders of withdrawal were received at the local land office on April 3, 1867, and May 10, 1867, respectively. When Mr. Wood made application to file upon the land he was informed that the land had been withdrawn, and his application was rejected. If those withdrawals were valid, no rights, legal or equitable, were acquired by his occupation and settlement.

It was said in *Wolsey* v. *Chapman,* 101 U. S. 755, 768: "The proper executive department of the government had determined that, because of doubts about the extent and

operation of that act, nothing should be done to impair the rights of the State above the Raccoon Fork until the differences were settled, either by Congress or judicial decision. For that purpose an authoritative order was issued, directing the local land officers to withhold all the disputed lands from sale.   This withdrew the lands from private entry, and, as we held in *Riley* v. *Wells*, was sufficient to defeat a settlement for the purpose of preëmption while the order was in force, notwithstanding it was afterwards found that the law, by reason of which this action was taken, did not contemplate such a withdrawal."

This has been and is the settled rule of the courts and the Land Department.   It is only a recognition of the limitations prescribed in the statutes, for, by Rev. Stat. § 2258, "lands included in any reservation by any treaty, law, or proclamation of the President, for any purpose " are expressly declared to be not subject to the rights of preëmption, and § 2289, the one giving the right to enter for a homestead, limits that right to "unappropriated public lands."   The fact that the withdrawals were made by order of the Interior Department, and not by proclamation of the President, is immaterial.

"A proclamation by the President reserving lands from sale is his official public announcement of an order to that effect. No particular form of such an announcement is necessary. It is sufficient if it has such publicity as accomplishes the end to be attained.   If the President himself had signed the order in this case, and sent it to the registers and receivers who were to act under it, as notice to them of what they were to do in respect to the sales of the public lands, we cannot doubt that the lands would have been reserved by proclamation within the meaning of the statute.   Such being the case, it follows necessarily from the decision in *Wilcox* v. *Jackson* that such an order sent out from the appropriate executive department in the regular course of business is the legal equivalent of the President's own order to the same effect.   It was, therefore, as we think, such a proclamation by the President reserving the lands from sale as was contemplated by the act."

These withdrawals were not merely executive acts, but the

latter one at least was in obedience to the direct command of Congress. Section 4 of the act granting lands to aid in the construction of what is now known as the Missouri, Kansas and Texas Railway Act of July 26, 1866, c. 270, § 4, 14 Stat. 290, is as follows:

"SEC. 4. And be it further enacted, That as soon as said company shall file with the Secretary of the Interior maps of its line, designating the route thereof, it shall be the duty of said Secretary to withdraw from the market the lands granted by this act in such manner as may be best calculated to effect the purposes of this act and subserve the public interest."

The map of the line of definite location called for by this section was filed on December 6, 1866, and the withdrawal followed in the succeeding spring.

Upon these admitted facts it is clear that Mr. Wood acquired no equitable rights by his occupation and settlement. He went upon lands which were not open to homestead or preëmption entry, and cannot make his unauthorized occupation the foundation of an equitable title. He was not acting in ignorance, but was fully informed both as to the fact and the law. He deliberately took the chances of the railway company's grant, being satisfied out of lands within the place limits, or by selections of lands within the indemnity limits other than this, and trusted that in such event this tract would be restored to the public domain and he gain some advantage by reason of being already on the land. But the event he hoped for never happened. The party for whose benefit the withdrawal was made complied with all the conditions of title and took the land.

The judgment of the Supreme Court of the State was correct, and it is

*Affirmed.*

MR. JUSTICE GRAY was not present at the argument and took no part in the decision of this case.