### HOLMES et ux. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1902.)

#### No. 694.

1. PUBLIC LANDS—EXCEPTIONS FROM FOREST RESERVATION—RIGHTS OF SETTLERS ON UNSURVEYED LAND.

While the mere occupancy and improvement of public land give no right as against the United States, yet the occupancy and improvement of unsurveyed public land, in good faith, by a settler who makes it his home, with the intention of making entry of the same under the homestead or pre-emption laws when it shall have been surveyed, has always been recognized as lawful, and as giving the settler a possessory claim, which entitles him to preference when the land is opened for entry; and, in view of such recognition, such a settler must be regarded as having made a "valid settlement pursuant to law," within the meaning of the president's proclamation of December 20, 1892, setting apart, as a forest reservation, certain public lands in California, but excepting all

lands within the prescribed boundaries "which may have been prior to the date hereof embraced in any legal entry or covered by any lawful filing duly of record * * * or upon which any valid settlement has been made pursuant to law;" and under the rule of the later decisions of the supreme court, that the withdrawal of lands from entry by the interior department as being within a railroad grant did not defeat the rights of subsequent settlers thereon where the withdrawal was in fact unauthorized, it is immaterial that the land of such settlers had been so withdrawn, and had never been formally restored to the public domain.

**2. Same—Act for Benefit of Settlers on Railroad Lands—Effect of Inclusion in Forest Reservation.**

Under Act Jan. 13, 1881 (21 Stat. 315 [U. S. Comp. St. 1901, p. 1594]), giving all persons who ᵒhave settled and made valuable and permanent improvements upon any odd-numbered section of land within a railroad withdrawal, in good faith, and with the permission or license of the railroad company, and with expectation of purchasing the same, the right to purchase not exceeding 160 acres of the same from the United States, if for any cause it shall be restored to the public domain, the right so given a settler is not defeated by the fact that after the withdrawal has been set aside the land is included within the boundaries of a forest reservation, created by proclamation of the president, before it has been surveyed so as to give the settler an opportunity to purchase.

In Error to the Circuit Court of the United States for the Southern District of California.

See 105 Fed. 41.

The United States brought an action of ejectment against the plaintiffs in error to recover the possession of the unsurveyed S. E. ¼ of section 7, township 4 N., range 9 W.; the said land being included in a reservation made by the president of the United States on December 20, 1892, pursuant to section 24 of the act of congress approved March 3, 1891 (26 Stat. 1103 [U. S. Comp. St. 1901, p. 1537]), which provides "that the president of the United States may, from time to time, set apart and reserve, in any state or territory having public land bearing forests, in any part of the public lands wholly or in part covered with timber or undergrowth, whether of commercial value or not, as public reservations, and the president shall, by public proclamation, declare the establishment of such reservations and the limits thereof." The proclamation excepted from the reservation "all lands which may have been, prior to the date hereof, embraced in any legal entry or covered by any lawful filing duly of record in the proper United States land office, or upon which any valid settlement had been made pursuant to law, and the statutory period within which to make entry or filing of record has not expired: * * * provided that this exception shall not continue to apply to any particular tract of land unless the entryman, settler or claimant continues to comply with the law under which the entry, filing, settlement, or location was made." 27 Stat. 1051. The plaintiffs in error, Albert O. Holmes and Susan L. Holmes, his wife, made separate defenses; the former claiming the right to occupy the premises by reason of the following facts: That in April, 1890, he settled upon the land in controversy in good faith to obtain a home for himself, and with the intention of claiming the same under the homestead laws of the United States, said land being then and at the commencement of the action unsurveyed public land; that at the date of his settlement the land had been withdrawn from entry by the United States land department, as being within the limits of the grant made by congress to the Southern Pacific Railroad Company by the act of March 3, 1871, for which reason he was not permitted to file on the land; that within six months after his settlement he established his actual residence in a house on the land, and has since resided there with his family, and that it is his intention as soon as the land is surveyed, if permitted to do so, to file his homestead application, and to make his entry under and in pursuance of the act "for the relief of settlers on the public lands," approved

May 14, 1880 [U. S. Comp. St. 1901, p. 1392]. Susan L. Holmes relied upon the following facts: That in April, 1890, with the permission and license of the Southern Pacific Railroad Company, she settled upon and made valuable improvements on the land in controversy, in good faith and with the expectation of purchasing the land of said company, and that she has since continuously resided thereon. She claimed to be entitled to acquire the land under the act "for the relief of certain settlers on restored railroad lands," approved January 18, 1881 (21 Stat. 315 [U. S. Comp. St. 1901, p. 1594]), and the "act to provide for the adjustment of land grants made by congress," etc., approved March 3, 1887 (24 Stat. 557 [U. S. Comp. St. 1901, p. 1595]). The land in controversy had been withdrawn from entry by the land department, as being within the limits of the grant to the Southern Pacific Railroad Company of March 3, 1871, and also within the overlapping limits of the grant to the Atlantic & Pacific Railroad Company, by act of July 27, 1866. The latter company did not construct any portion of its line in California, and, in consequence of such failure, congress, by Act July 6, 1886 (24 Stat. 123), forfeited and restored the unearned lands to the public domain. The withdrawal by the land department, however, was continued in force, notwithstanding said forfeiture, upon the assumption that the lands were included in the grant of March 3, 1871, to the Southern Pacific Railroad Company. On July 8, 1891, Susan L. Holmes made application to the Southern Pacific Railroad Company to purchase the land in controversy. The company received her application, and, in writing, informed her that, "if there be two or more applications for the same tract of land, the actual settler, who in equity is best entitled to purchase, will be given the preference," but notified her that the company reserved to itself the right not to sell the land by itself, but to sell it in conjunction with other lands. Thereafter suits were brought by the United States against the Southern Pacific Railroad Company to determine the status of the lands within said overlapping limits, and the supreme court on October 18, 1897, held that the lands within the overlapping limits became, upon the passage of the forfeiture act of 1886, the property of the United States, and were thereby restored to the public domain, and that the Southern Pacific Railroad Company never acquired any interest therein. 18 Sup. Ct. 18, 42 L. Ed. 355. On September 6, 1898, by the order of the commissioner of the general land office, all lands lying within the overlapping limits of the railroad grants were restored to the public domain, with the exception of lands lying within the reservation; but, as to said lands, permission was given to all persons having claims therein, initiated prior to the creation of such reservation, to present such claims for consideration by the authorities of the United States land office. The circuit court, upon this state of the facts, held that by reason of the fact that the land was withdrawn from entry by the action of the land department at the time of the settlement thereon by the plaintiffs in error, and remained so withdrawn up to the time of the proclamation of the president on December 20, 1892, setting apart the land as a portion of a public reservation, the plaintiffs in error could acquire no right in the land which they could set up against the action of ejectment brought by the United States to recover its possession.

D. M. McDonald and Borden & Carhart, for plaintiffs in error.

L. H. Valentine, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is conceded that the land in controversy had not, prior to the date of the proclamation of the president, been embraced in any legal entry or covered by any lawful filing of record in the United States land office; but it is contended that it is land upon which a valid settlement had been made pursuant to law, and that the statutory period

within which to make entry or filing had not expired. The circuit court decided this question adversely to the plaintiff in error Albert O. Holmes, for the reason that at the time when he made his settlement the lands were withdrawn from entry and settlement; citing Maddox v. Burnham, 156 U. S. 544, 15 Sup. Ct. 448, 39 L. Ed. 527, and Wood v. Beach, 156 U. S. 548, 15 Sup. Ct. 410, 39 L. Ed. 528. In so ruling, the circuit court followed the law as it was understood, and as it had been settled by a series of decisions of the supreme court. A few months after the decision of the circuit court was rendered, however, the supreme court, in Hewitt v. Shultz, 180 U. S. 139, 21 Sup. Ct. 309, 45 L. Ed. 463, overruled its prior decisions, and denied the efficacy of the act of withdrawal to exclude from settlement land which was not in fact withdrawn by the operation of a present grant, and which, but for the withdrawal, would have been open to entry and settlement under the public land laws. By the decision in that case and in the subsequent case of Railroad Co. v. Bell, 183 U. S. 675, 22 Sup. Ct. 232, 46 L. Ed. 383, the court has held that the withdrawal of lands by the secretary of the interior for the reason that they were supposed to be within the limits of a grant to a railroad company could not injuriously affect the right of a settler upon such land, who claimed the right to enter and settle the same as public land of the United States. The question of the right of Albert O. Holmes, therefore, is to be dealt with as if there had been no withdrawal of the land. But the land was, and still is, unsurveyed land. If it had been surveyed, and Holmes had tendered a filing thereupon, or had attempted to enter it as a homestead at the local land office, his possessory right would be entitled to protection, under the authority of Ard v. Brandon, 156 U. S. 537, 15 Sup. Ct. 406, 39 L. Ed. 524. But in Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, it was held that no portion of the public domain is open to sale until it has been surveyed, and that a settler upon the public lands in advance of the public surveys acquires no right except the preferential right to secure the land after the survey. Of the right of such a settler, the court said:

"The United States make no promise to sell him the land, nor do they contract with him upon the subject. They simply say to him, 'If you wish to settle upon a portion of the public lands, and purchase the title, you can occupy any unsurveyed lands which are vacant and have not been reserved from sale; and, when the public surveys are made and returned, the land not having been in the meantime withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them.'"

Conceding that the mere occupation of public land gives no right as against the government, and that the president had the power, under the act of congress, to set apart the land in controversy in a public reservation, and that neither of the plaintiffs in error had acquired any interest therein which they could successfully set up as against that right, we come to the inquiry whether it was the intention of the act of congress and the proclamation of the president to include this land in the reservation. The exceptions expressed in the proclamation are three, —lands "embraced in a legal entry," or "covered by a lawful filing of record," and lands "upon which any valid settlement has been made pursuant to law." By the last of these exceptions it was contemplated

that there might be a valid settlement on the public lands, other than those which were embraced in legal entries or covered by lawful filings, as those terms were used in the public land laws. Does the settler upon unsurveyed land, who makes it his home with the intention, as soon as the land is surveyed, to take the necessary steps to secure and protect his entry as a homestead, and to acquire title under the homestead law, and who makes valuable and permanent improvements on the land, make a "valid settlement pursuant to law"? In Clements v. Warner, 24 How. 394–397, 16 L. Ed. 695, it was said:

"The law deals tenderly with one who in good faith goes upon the public lands with a view of making a home thereon."

In Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, it was said:

"A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase."

In Railroad Co. v. Osborne, 160 U. S. 103, 16 Sup. Ct. 219, 40 L. Ed. 346, it was held that a settler upon public unsurveyed land, who had made improvements thereon with the intention of acquiring a title under the pre-emption laws as soon as the lands should be surveyed, had a "possessory claim," such as was protected by the act of congress in granting to a railroad company a right of way over the public lands, and conferring upon a territorial legislature power to "provide for the manner in which private lands and possessory claims on the lands of the United States may be condemned." The court said:

"It would not be easy to suppose that congress would, in authorizing railroad companies to traverse the public lands, intend thereby to give them a right to run the lines of their roads at pleasure, regardless of the rights of settlers."

In Railroad Co. v. Ziegler, 167 U. S. 65, 17 Sup. Ct. 728, 42 L. Ed. 79, that doctrine was reaffirmed. It is true, there is no statutory provision which in express terms permits or protects settlement upon unsurveyed public land. We think, however, in view of the foregoing expressions of the supreme court, and the known recognition of the rights of such settlers as against all except the United States, that such a settlement, while it confers no right which the government is bound to respect, is nevertheless a valid settlement, and made pursuant to law, and that it comes within the spirit and intent of the exception contained in the proclamation of the president.

We are inclined, also, to the view, and we so hold, not without some doubt, that Susan L. Holmes had a possessory right by virtue of the act of congress of January 3, 1881 (21 Stat. 315 [U. S. Comp. St. 1901, p. 1594]), whereby it was enacted:

"That all persons who shall have settled and made valuable and permanent improvements upon any odd numbered section of land within any railroad withdrawal in good faith and with the permission or license of the railroad company for whose benefit the same shall have been made, and with the expectation of purchasing of said company the land so settled upon, which land so settled upon and improved may, for any cause, be restored to the public domain, and who, at the time of such restoration, may not be entitled to enter and acquire title to such land under the pre-emption, homestead, or timber-culture acts of the United States, shall be permitted, at any time

within three months after such restoration, and under such rules and regulations as the commissioner of the general land office may prescribe, to purchase not to exceed one hundred and sixty acres in extent of the same by legal subdivisions, at the price of two dollars and fifty cents per acre, and to receive patents therefor."

According to the record, Susan L. Holmes settled upon and made valuable improvements upon the land in controversy. That it is a portion of an odd-numbered section is alleged in the complaint which is filed in this action. She entered with the permission and license of the railroad company, and with the expectation of purchasing. At that time the land was withdrawn from settlement under the public land laws. Can it be said to be within the purport of the proclamation of the president in devoting a large tract of land, including the land occupied by such a settler, to a public use, to defeat the protection to bona fide settlers which was intended to be afforded by the act? We hesitate to so construe it. The land is no less a part of the public domain after having been set aside for a timber reservation. By the proclamation the lands have been restored to the public domain, and, while they have not been so restored as to become subject to entry under the homestead laws, the claim of the railroad company has nevertheless been extinguished, and the withdrawal has been set aside. The lands have thereby been taken out of the category of withdrawn lands to which the act referred. It is true that Susan L. Holmes has not, within three months after such restoration, purchased the land, but it is not her fault that she has not done so. The land has not been surveyed, and she has had no opportunity to purchase. If the act gave her the right to purchase, we think her right is not precluded until the survey shall have been made, and that until that survey is made she has a possessory right sufficient to constitute a defense against this action of ejectment, even if she has not made a "valid settlement pursuant to law," so as to come within the exception to the proclamation.

The judgment will be reversed, and the cause remanded for further proceedings not inconsistent with the foregoing views.