## MADDOX *v.* BURNHAM.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 144. Argued January 10, 1895. — Decided March 4, 1895.

In the year 1866 the mere occupation of public land, with a purpose at some subsequent time of entering it for a homestead, gave the party so occupying no rights.

THIS case resembles the preceding in so far as the legal title is concerned. The action was commenced in the District Court of Allen County, Kansas, by a grantee from the railway company. In that court judgment was rendered in favor of the defendant, which judgment was afterwards

reversed by the Supreme Court of the State, and judgment ordered in favor of the plaintiff for the possession of the land in controversy.

*Mr. William Lawrence* for plaintiff in error.

*Mr. A. B. Browne,* (with whom were *Mr. A. T. Britton* and *Mr. George R. Peck* on the brief,) for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The only thing distinguishing this case from the preceding and calling for any comment is the equitable claim which the defendant presents. It appears from the testimony that the defendant moved upon the land in October, 1866, but made no attempt to enter it as a homestead until the succeeding spring, and after the withdrawals had been ordered by the Secretary of the Interior. In support of his claim the defendant called as a witness his father-in-law, who, after stating that defendant and himself went upon the tracts, on which they still resided, somewhere about the 20th of October, 1866, testified as follows:

"We drove on to the land on Saturday evening, and on Monday morning I took a horse and went to Humboldt to the land office to see if we could have permission for Maddox and me both — I went for both of us — to get these pieces of land and put up our houses and live in them till the next spring, and then we would make our homestead, and he gave us the permission to do so. He said that he had given others permission to do so. I told him that we were scarce as to money then, but that we would have some money in the spring and then we wanted to make our homestead."

He further said that under this permission they occupied the lands and made improvements; that when they went in the succeeding spring for the purpose of making their homestead entries, they were told that the lands had been withdrawn. On cross-examination he was asked this question:
"Q. The first time that you went there you did not offer to

file your homestead, but simply to inquire about it?" and answered it in the affirmative. The defendant himself, on cross-examination, gave this testimony:

"Q. Why did you not make the homestead entry when you first went there in the fall?

"A. Well, sir, the reason is this: We did not have money enough to do it, and we were in a new country and a strange country and we did not know whether we would get anything to do.

"Q. Do you remember how much money you had at the time?

"A. About thirteen dollars — both of us — between us."

Upon these facts he insists that his equitable rights antedated the withdrawals, and are superior to the legal title.

This claim of the defendant cannot be sustained. At the time of these transactions the mere occupation of land with a purpose at some subsequent time of entering it for a homestead gave to the party so entering no rights. The law in force (12 Stat. 392, c. 75) made the entry at the land office the initial fact. Sec. 1 authorized any one possessed of the prescribed qualifications "to enter one quarter section, or a less quantity, of unappropriated public lands." Sec. 2 provided that the person applying should, upon his application, make affidavit, among other things, "that such application is made for his or her exclusive use and benefit, and that said entry is made for the purpose of actual settlement and cultivation, . . . and upon filing the said affidavit with the register or receiver, and on payment of ten dollars, he or she shall thereupon be permitted to enter the quantity of lands specified." So the law stood until May 14, 1880, 21 Stat. 141, c. 89, when an act was passed, the third section of which is as follows:

"SEC. 3. That any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land office, as is now

allowed to settlers under the preëmption laws to put their claims on record, and his right shall relate back to the date of settlement, the same as if he settled under the preëmption laws."

By this section for the first time the right of a party entering land under the homestead law was made to relate back to the time of his settlement. But this act was passed long after the rights of the railway company had accrued and the legal title had passed to it. It is not operative, therefore, to divest such legal title, or enlarge as against such title any equitable rights which the defendant theretofore had. They must be determined by the law as it stood at the time he made his entry, or at least prior to the time that the title passed to the railway company. Now, from his own testimony, while he moved on the land in October, 1866, he made no application to enter it until after the lands had been withdrawn. It is true that he claims that he had permission from the register of the land office to go upon the land and occupy it, but the register had no power to give such permission; he had no general control over the unappropriated public lands; he could vest no rights, legal or equitable, in any individual other than such as are authorized by statute. His authority was limited to receiving and acting upon applications for homestead or preëmption entry, and it cannot be that any such unauthorized permission of a local land officer can create a right not given by the statute, or defeat a title conveyed by the government in full compliance with the law. This is not like the cases just decided in which the local land officer refused to receive an application which he ought to have received; neither is it one in which such officer failed to do anything which he ought to have done. No application was made for an entry. The excuse tendered is that he was not possessed of sufficient money to pay the required fees; the father-in-law and the son-in-law had but thirteen dollars between them, and twenty dollars was the amount necessary for the entry of the two homesteads; but unfortunate as the defendant's situation then was, much as he may be entitled to sympathy, it cannot be

that when he fails, even by reason of his poverty to do that which the law prescribes as the initiation of any rights in the land, he is nevertheless entitled to the same protection which he would receive had he complied with the statute. Leniently as the conduct of a settler is always regarded by the courts, it cannot be that such leniency will tolerate the omission by him of any of the substantial requirements of the statute in respect to the creation of rights in the public lands.

There was no error in the conclusions of the Supreme Court of the State, and its judgment is, therefore,

*Affirmed.*

MR. JUSTICE GRAY was not present at the argument and took no part in the decision of this case.